STATE OF TENNESSEE, DEPT. OF HIGHWAYS, David M. Pack, Commissioner, Petitioner,

*v.*

URBAN ESTATES, INC., and The Metropolitan Government of Nashville-Davidson County, Tennessee, Respondents.

465 S.W.2d 357.

(*Nashville*, December Term, 1970.)

Opinion filed February 10, 1971.

Petition for Rehearing Denied April 5, 1971.

194

DAVID M. PACK, Attorney General, and Reporter,
HOWELL & FISHER, Nashville, for petitioner.

D. L. LANSDEN, WALLER, LANSDEN, DORTCH & DAVIS,
Nashville, for respondents.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

This is an eminent domain proceeding in which the State condemned 6.07 acres of land as a right-of-way for Interstate I-65 Highway. The State deposited $10,-015.00 with the clerk as compensation for the property.

The Metropolitan Government of Nashville and Davidson County has no interest in the controversy except for the collection of taxes. Urban Estates is the only interested landowner.

The jury returned a verdict in favor of respondent, Urban Estates, for the sum of $15,157.00.

In his judgment, the trial judge found the Metropolitan Planning Commission had adopted subdivision regulations preventing the use of property for subdivision purposes where such property is shown as a thorough-

fare on the Master Plan of the proposed subdivision; that the State had furnished the Planning Commission with a center line survey of Interstate I-65 prior to February 5, 1963; and that pursuant to the foregoing subdivision regulations, the Planning Commission required the subdivision plan filed February 5, 1963, reserve the 6.07 acres here involved as a right-of-way for I-65. On the basis of these facts, the trial judge awarded interest at the rate of 6% per annum on $15,175.00 from February 5, 1963, to September 8, 1966, and interest at the same rate on the unpaid balance from September 8, 1966, until the payment of that sum into court.

The State perfected an appeal to the Court of Appeals and assigned as error the above action of the trial judge after the jury had returned its verdict. The Court of Appeals reversed and remanded the case with instructions as to the method of trial involving the factual question of the "date of taking," that should be followed in the second trial. This Court granted certiorari.

In April, 1962, respondent purchased 45.9 acres of land from Hailey and wife. At approximately the same time Suburban Properties acquired an adjacent tract of 76 acres from Mayes and wife.

Marvin Barry was the Chief Executive Officer and controlling shareholder of both corporations. The tracts were purchased for subdivision purposes.

Subsequent to acquiring the two tracts, James L. Murphy Company was employed to survey the property and lay it out in lots consistent with the zoning regulations of the Metropolitan Planning Commission.

Mr. Murphy discussed the matter with the Commission and as a result thereof he prepared a preliminary

plan for the subdivision dated January 28, 1963, which is an exhibit in the record. This plan shows the proposed right-of-way of 6.07 acres for Interstate Highway I-65.

Mr. Barry, at the time he purchased the properties for respondent and Suburban Properties, did not know the proposed right-of-way traversed these properties. He learned this when he employed Murphy to make the survey some six or eight months after the purchases.

Since the right-of-way traversed both tracts, it was impossible to develop the two tracts as one subdivision.

Thereafter, Murphy prepared a plan for the subdivision of the tract purchased by Urban Estates. This plan was submitted to the Planning Commission on February 5, 1963, and received preliminary approval on March 4, 1963. On the same date, February 5, 1963, Murphy submitted a plan for the development of Oak Park Subdivision and this plan was preliminarily approved by the Commission on March 4, 1963.

Sewers and the trunk lines for the subdivisions were finished in the early part of 1964.

In March, 1964, all the land embraced in the subdivisions was sold to F. J. Moran, Trustee. The 6.07 acres shown on the plans as a right-of-way for the proposed Interstate Highway I-65 were retained by Urban Estates.

The State filed its petition on August 22, 1966, seeking to acquire the 6.07 acres of land as a right-of-way for Interstate Highway I-65.

The order of condemnation and appropriation was entered on September 8, 1966.

In its answer filed on September 14, 1966, respondent did not question the right of the State to condemn the property; nor did respondent contend the "date of taking" was other than September 8, 1966. In fact, it was orally stipulated at the trial by Counsel for the parties the "date of taking" was September 8, 1966.

The trial was held in June, 1969. The trial judge charged the jury as follows:

"All of the issues made in this suit have been agreed upon by the parties litigating except the value of the land acquired by the State. It is, therefore, the duty of you, Ladies and Gentlemen of the Jury, to fix the value of the parcel of the land on the date the same was acquired by the State."

\* \* \* \* \* \*

"When you return to report your verdict you will be asked for your verdict as to the fair cash market value of the land that was taken, and this amount will be reported without interest as interest is a fixed legal charge which will be computed by the court on the amount you fix as the fair cash market value."

The Court of Appeals held the trial judge erred in awarding interest prior to September 8, 1966, but was of the opinion respondent was due some compensation for impairment to its property prior to this date. That Court reversed and remanded the entire case for a new trial with instructions the issues of the date of taking and the fair market value of the property as of such date be submitted to the jury.

The State has filed two assignments of error in this Court.

The first assignment insists the Court of Appeals erred in refusing to void the trial court's award of interest from February 5, 1963, to September 8, 1966, and reversing the entire judgment of the trial court and ordering a new trial. We agree this assignment is good and should be sustained.

■ From a complete and thorough review of the record, it is clear the parties orally stipulated at the trial of the case the date of taking was September 8, 1966. Having made this stipulation, the parties are bound thereby.

"When a party makes a concession or adopts a theory by stipulation and his cause of action is determined on this concession or theory, then that party must abide by his decision even on appeal by certiorari. *Lewis & Sons v. Ill. Cent. R. Co.*, 150 Tenn. 94, 259 S.W. 903; *Stearns v. Williams*, 12 Tenn.App. 427.

"These stipulations will be rigidly enforced by the courts of this State. *State ex rel. Weldon v. Thomason*, 142 Tenn. 527, 221 S.W. 491; *Tucker v. International Salt Co.*, 209 Tenn. 95, 349 S.W.2d 541." *Bearman v. Camatsos*, 215 Tenn. 231, 385 S.W.2d 91 (1964).

Hence, the oral stipulation by the parties the date of taking was September 8, 1966, controls and is binding on this appeal.

For the same reason, it was error for the Court of Appeals to reverse and remand the case for a new trial to litigate the fact of the date of taking which had been stipulated by the parties in the trial court.

Interest is allowed on the amount awarded by a jury in excess of the amount deposited with the clerk of the

trial court in a condemnation proceeding by the State "from the date of the taking of possession of the property or property rights condemned by the condemner provided, however, that no interest shall be allowed on the amount deposited with said clerk." T.C.A. Section 23-1526.

All the evidence introduced on behalf of respondent in this case as to the fair market value of the land condemned was as of the stipulated date of taking, September 8, 1966. This was the date upon which the jury found the value of the property under instructions of the trial judge.

Respondent cannot now successfully contend this property was appropriated on February 5, 1963, and seek interest on the verdict from that date. Respondent elected to stipulate the date of taking. Respondent cannot elect a date of taking for valuation and a prior date for interest on the jury's award.

However, respondent insists its rights under our State and Federal Constitutions will be violated unless respondent is justly compensated for the taking of the property on February 5, 1963.

■ This argument overlooks the fundamental rule constitutional provisions for one's benefit and protection may be waived, especially when no question of public policy or morals is concerned. *State ex rel. Barnes v. Henderson*, 220 Tenn. 719, 423 S.W.2d 479 (1967).

"It seems that constitutional provisions intended to protect property may in all instances be waived." 16 Am.Jur.2d Constitutional Law, Section 131, page 328.

■ Respondent knowingly, intentionally and voluntarily relinquished its right to be compensated for any taking of its property on February 5, 1963, by stipulating the date of taking as of September 8, 1966.

We are also of the opinion the second assignment of error of the State should be sustained. This assignment challenges the action of the Court of Appeals in directing the trial court on the second trial to consider respondent is entitled to be compensated for impairment to the value and usefulness of its property caused by acts of the State prior to the actual taking.

■ It is well settled in this State that the value of property for purposes of condemnation must be ascertained without considering any enhancement or depreciation which occurred before the taking because of the anticipation of the public improvement for which the taking is made. *City of Memphis v. Bolton,* 56 Tenn. 508 (1872); *Woodfolk v. Nashville & C. Railroad,* 32 Tenn. 421 (1852); *State Department of Highways v. Jennings,* 58 Tenn.App. 594, 435 S.W.2d 481 (1968).

It results the judgment of the Court of Appeals is reversed. The judgment of the trial court is modified to the extent of the allowance of interest from February 5, 1963, to September 8, 1966, is vacated; and in all other respects is affirmed.

Respondent will pay the costs of the appeal. The State will pay the costs below.

DYER, CHIEF JUSTICE, and CRESON and HUMPHREYS, JUSTICES, concur.

McCANLESS, JUSTICE, not participating.

ON PETITION TO REHEAR

MR. JUSTICE CHATTIN.

Petitioner has filed an earnest petition to rehear. The opinion was released on February 10, 1971. The petition to rehear was filed on February 26, 1971.

■ Respondents have filed a motion to dismiss the petition on the ground the petition was filed more than ten days after the opinion was announced. The motion should be granted. Supreme Court Rule 32.

However, we have considered the petition and find there is no new argument made, no new authority adduced, and no material fact is pointed out as overlooked.

■ Office of petition to rehear is to call attention of the Court to matters overlooked, not those things which Counsel supposes were improperly decided after full consideration. *Knox v. Batson*, 217 Tenn. 620, 399 S.W. 2d 765 (1966).

The petition is denied at the cost of petitioner.

DYER, CHIEF JUSTICE, and CRESON and HUMPHREYS, JUSTICES, concur.

McCANLESS, JUSTICE, not participating.