FILED
04/14/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 1, 2022

## STATE OF TENNESSEE v. JASON KEVIN DEDREUX

**Appeal from the Criminal Court for Washington County**
**No. 37811        Lisa Rice, Judge**

_____

### No. E2021-00786-COA-R3-CV

_____

After expiration of the maximum sentence imposed for a non-violent felony conviction, a petitioner sought full restoration of his citizenship rights. The trial court restored all of the petitioner's rights, except for his firearm rights. Discerning that the trial court erred in limiting the restoration of the petitioner's rights, we reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and KENNY W. ARMSTRONG, JJ., joined.

Larry R. Dillow, Kingsport, Tennessee, for the appellant, Jason Kevin DeDreux.

Herbert H. Slatery, III, Attorney General and Reporter, and Katherine Casseley Redding, Senior Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 2013, Jason Kevin DeDreux pleaded guilty to a non-violent class E felony—driving under the influence (fourth offense). The trial court sentenced him to 150 days in confinement followed by one year on community corrections, ordered him to pay $3,000 in fines, and revoked his driving privileges for five years.[1] This conviction rendered

_____

[1] Upon conviction of driving under the influence (fourth offense), a defendant must be sentenced "to serve not less than one hundred fifty (150) consecutive days nor more than the maximum punishment authorized for the appropriate range of a Class E felony." Tenn. Code Ann. § 55-10-402(a)(4). The maximum sentence for Range I is two years. Tenn. Code Ann. § 40-35-112(a)(5). The maximum sentence

Mr. DeDreux infamous[2] and immediately prohibited him from exercising his civil rights, including his right to possess a firearm, under state law. *See* Tenn. Code Ann. § 39-17-1307(c). The conviction also prohibited him from possessing a firearm under federal law. *See* 18 U.S.C.A. § 922(g).

Mr. DeDreux filed a petition to restore his citizenship rights pursuant to Tenn. Code Ann. § 40-29-101 on September 8, 2020, asserting that he was entitled to full restoration of his citizenship rights because he paid all fines and costs and completed his sentence without any infractions. He attached four witness affidavits to the petition, all stating that Mr. DeDreux had a reputation of "honesty, respectability, and veracity." *See* Tenn. Code Ann. § 40-29-102 (requiring that the petition be "sustained by satisfactory proof that ever since the judgment of disqualification, the petitioner has sustained the character of a person of honesty, respectability and veracity, and is generally esteemed as such by the petitioner's neighbors"). After filing the petition, Mr. DeDreux sent copies of it to the Washington County District Attorney and to the U.S. attorney for the district of his residence. *See* Tenn. Code Ann. § 40-29-103 (stating that, before petition is heard, the petitioner must notify the district attorney general of the county where petitioner lives and of the county where convicted and the United States attorney for the district of petitioner's residence"). Neither filed a pleading contesting Mr. DeDreux's petition.

The trial court held a hearing on the petition on December 2, 2020. During the hearing, the court expressed concerns about whether it had the authority to restore any citizenship rights other than voting rights. Mr. DeDreux argued that the court did have authority to restore all citizenship rights and that, under Tenn. Code Ann. §§ 40-29-101 through -105, there was a presumption that his full citizenship rights should be restored. The assistant district attorney agreed with Mr. DeDreux's assessment of the statutes and advised the court that the State had no objection to full restoration of Mr. DeDreux's citizenship rights.

After reviewing all of the witness affidavits, the court instructed Mr. DeDreux's attorney to prepare an agreed order restoring Mr. DeDreux's full citizenship rights, send it to the assistant district attorney to review, and if the assistant district attorney approved it, send the order to the court. When the assistant district attorney approved the agreed order, Mr. DeDreux's attorney sent it to the trial court. The order included the following sentence: "[T]he Petitioner's full citizenship and all rights appertaining thereto pursuant to the laws

_____

for Range II is four years. Tenn. Code Ann. § 40-35-112(b)(5). The maximum sentence for Range III is six years. Tenn. Code Ann. § 40-35-112(c)(5).

[2] Tennessee Code Annotated section 40-20-112 states that "[u]pon conviction for any felony, it shall be the judgment of the court that the defendant be infamous and be immediately disqualified from exercising the right of suffrage." This statute is authorized by the Tennessee Constitution, article IV, section 2, which states, "laws may be passed excluding from the right of suffrage persons who may be convicted of infamous crimes."

of the State of Tennessee should be fully and completely restored to him." Before signing the order, the court included the following handwritten notation immediately after the aforementioned sentence: "w[ith] exception of restoration of firearms rights."

Mr. DeDreux filed a motion for a new trial asserting that the trial court failed to consider the unrefuted presumption that his full citizenship rights should be restored and failed to state its reasons for limiting the restoration of his rights. He then filed an amended motion adding an assertion that the trial court's decision was contrary to the law and the evidence. After hearing arguments on the motion, the trial court entered an order treating the motion as a request "for reconsideration" and stating that the court agreed with Mr. DeDreux in many respects but was denying the motion because it believed it could not restore his firearm rights due to a conflict between state and federal firearm statutes.

On appeal, Mr. DeDreux presents only one issue for our review: whether the trial court erred in limiting the restoration of his citizenship rights.

STANDARD OF REVIEW

This appeal involves the interpretation of various statutes. When construing statutes, our primary objective "is to ascertain and give effect to the intention or purpose of the legislature as expressed in the statute," *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007), "'without unduly restricting or expanding'" the coverage of the statute beyond its intended scope. *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002)). To achieve this objective, we look to the plain and ordinary meaning of the language in the statute. *Id.* We must construe the words used "in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). "Construction of a statute is a question of law which the appellate courts review *de novo* without a presumption of correctness." *Hinkle v. Kindred Hosp.*, No. M2010-02499-COA-R3-CV, 2012 WL 3799215, at *4 (Tenn. Ct. App. Aug. 31, 2012) (citing *Hill v. City of Germantown*, 31 S.W.3d 234, 237 (Tenn. 2000)). A trial court's factual findings, on the other hand, are reviewed de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d). Evidence preponderates against a trial court's factual findings if it demonstrates "'that a finding of fact other than the one found by the trial court is more probably true.'" *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015) (quoting *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005)).

ANALYSIS

Mr. DeDreux contends that Tenn. Code Ann. § 40-29-101 entitled him to full restoration of his citizenship rights, including his firearm rights. The State agrees with Mr.

DeDreux and takes the position that the trial court should not have excluded Mr. DeDreux's firearm rights when it restored his citizenship rights.

When a person is convicted of a felony, Tennessee sanctions that person's civil rights in addition to subjecting him or her to criminal punishment. *Cole v. Campbell*, 968 S.W.2d 274, 275-76 (Tenn. 1998). These sanctions appear in "a series of specific disability statutes" that immediately revoke particular civil rights upon conviction. *Id.* at 276. The rights revoked include the loss of the right to serve on a jury, Tenn. Code Ann. § 22-1-102; to possess firearms, Tenn. Code Ann. § 39-17-1307; to vote, Tenn. Code Ann. § 40-20-112; to hold public office, Tenn. Code Ann. § 40-20-114; and to serve as a fiduciary, Tenn. Code Ann. § 40-20-115. However, a person convicted of a crime and "'rendered infamous or deprived of the rights of citizenship,'" may seek to have his or her citizenship rights restored under the Restoration Statute, Tenn. Code Ann. § 40-29-101 through -105. *State v. Johnson*, 79 S.W.3d 522, 527 (Tenn. 2002) (quoting Tenn. Code Ann. § 40-29-101); *see also Blackwell v. Haslam*, No. M2012-01991-COA-R3-CV, 2013 WL 3379364, at *11 (Tenn. Ct. App. June 28, 2013). The purpose of this statute is to "wipe out the transgressions of the offending person and to give him another chance in society." *Bryant v. Moore*, 279 S.W.2d 517, 518 (Tenn. 1955). Unless restored by the procedures set forth in the Restoration Statute, civil disabilities that occur upon conviction "remain[] in effect throughout the defendant's life." *Johnson*, 79 S.W.3d at 527.

What procedures must a person follow to have his or her citizenship rights restored under the statute? The answer depends on the date of conviction. As relevant here, "a person rendered infamous by virtue of being convicted of a felony on or after July 1, 1996, . . . may petition for restoration upon the expiration of the maximum sentence imposed by the court for the infamous crime." Tenn. Code Ann. § 40-29-105(c)(2)(B). The petition must: (1) be filed either in the circuit court of the county where the petitioner resides or the county where the conviction for the crime occurred, (2) "set forth the basis for the petitioner's eligibility for restoration," (3) state the reasons the petitioner believes his or her full citizenship rights should be restored, and (4) "be accompanied by the certified records, statements and other documents or information necessary to demonstrate . . . that the petitioner is both eligible for and merits having full rights of citizenship restored." Tenn. Code Ann. § 40-29-105(c)(1), (3); *see also* Tenn. Code Ann. § 16-10-104 ("The circuit court has exclusive jurisdiction to hear and determine applications to be restored to citizenship, made by persons who have been rendered infamous by the judgment of any court of this state.").

When a petitioner seeks restoration of his or her rights pursuant to Tenn. Code Ann. § 40-29-105(c)(3), "[t]here is a presumption that [the] petition . . . shall be granted and that the full citizenship rights of the petitioner shall be restored." The presumption "may only be overcome upon proof by a preponderance of the evidence that either the petitioner is not eligible for restoration or there is otherwise good cause to deny the petition." *Id.* To determine whether the presumption has been rebutted, evidence of "the petitioner's

- 4 -

conduct after his conviction, rather than before it, is the appropriate focus." *State v. Black*, No. M2000-02935-COA-R3-CV, 2002 WL 1364043, at *8 (Tenn. Ct. App. June 25, 2002) (citing Thomas R. McCoy, *Special Project, the Collateral Consequences of a Criminal Conviction*, 23 VAND. L.REV. 929, 1143 (1970).

We note that, although a petitioner may satisfy all of the requirements in the Restoration Statute, a court may decline to fully restore his or her rights because "a person who is adjudged infamous or deprived of rights of citizenship does not have an absolute right to the restoration of the full rights of citizenship." *Johnson*, 79 S.W.3d at 527; *see also In re Cox*, 389 S.W.3d 794, 798-99 (Tenn. Crim. App. 2012). Rather, the process for restoring citizenship rights remains subject to the requirements and restrictions imposed by the General Assembly. *In re Cox*, 389 S.W.3d at 799. As pertinent to this case, "the restorable 'full rights of citizenship' . . . do not include firearm rights if those rights were removed pursuant to Section 39-17-1307(b)(1)." *Blackwell*, 2013 WL 3379364, at *11; *see also Johnson*, 79 S.W.3d at 528. Tennessee Code Annotated section 39-17-1307(b)(1) prohibits the following people from possessing firearms: (1) a person "convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving use of a deadly weapon" and (2) a person "convicted of a felony drug offense[.]" Additionally, subsection (f)(1) bars the following from possessing a firearm: (1) a person "convicted of a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921, and is still subject to the disabilities of such a conviction"; (2) a person subject to certain orders of protection; or (3) a person "prohibited from possessing a firearm under any other state or federal law." Tenn. Code Ann. § 39-17-1307(f)(1). Thus, if a petitioner satisfies all of the requirements of the Restoration Statute but falls within the purview of Tenn. Code Ann. § 39-17-1307(b)(1) and (f)(1), a court must decline to restore his or her firearm rights. If none of these restrictions apply and a petitioner establishes his or her eligibility for restoration of civil rights, however, the petitioner's firearm rights are included in the "restorable 'full rights of citizenship,'" and a court should restore them unless a preponderance of the evidence shows that good cause exists not to restore them. *Blackwell*, 2013 WL 3379364, at *11; *see also* Tenn. Code Ann. § 40-29-105(c)(3).

Applying the foregoing principles to the case at bar, we conclude that Mr. DeDreux satisfied all of the requirements of the Restoration Statute. The maximum sentence imposed by the trial court for his conviction was 150 days in jail followed by one year on community corrections and revocation of his driving privileges for five years. That sentence was entered in 2013 and expired before Mr. DeDreux filed his petition in 2020. The record shows that he filed the petition in the circuit court[3] of the county where the

---

[3] We acknowledge that Mr. DeDreux filed the petition in the Washington County criminal court. As the Tennessee Supreme Court explained, however:

> When we consider the character of the courts in the state, we conclude a criminal court is to all intents a circuit court, and we are not permitted to isolate the few strictly criminal courts, and declare they have less power to maintain their respectability, safety, and

conviction occurred, that the petition set forth the reasons he believed he was eligible for restoration of his citizenship rights, and that the petition was accompanied by the records necessary to demonstrate his eligibility for full restoration. After satisfying all of the Restoration Statute's requirements, Mr. DeDreux established that Tenn. Code Ann. § 39-17-1307(b)(1) and (f)(1) did not apply to permanently bar him from restoration of his firearm rights because he was convicted of a non-violent felony for an alcohol-related offense. He also established that no other state or federal statute prohibited him from possessing a firearm.

The trial court agreed that Mr. DeDreux established his eligibility for restoration of his citizenship rights, but the court concluded that "otherwise good cause" existed to overcome the presumption that his full citizenship rights should be restored. Tenn. Code Ann. § 40-29-105(c)(3). Specifically, the court believed that it was prohibited from restoring Mr. DeDreux's firearm rights because the Restoration Statute conflicted with the federal firearms statute, 18 U.S.C.A. § 922. Although there may be a situation where the statutes would conflict, we discern no conflict under the circumstances of this case.

Pursuant to 18 U.S.C.A. § 922(g)(1), it shall be illegal for a person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to possess firearms. Be that as it may, the federal code contains the following exception to this rule that is based on the definition of such a "conviction":

> What constitutes a conviction of such a crime shall be determined in accordance with *the law of the jurisdiction in which the proceedings were held*. Any conviction . . . for which a person has . . . had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."

18 U.S.C.A. § 921(a)(20) (emphasis added). In other words, if a petitioner convicted of a felony under Tennessee law has his or her rights fully restored pursuant to Tennessee law, he or she no longer meets the federal law's definition of "conviction."[4]

---

existence than have the many circuit courts clothed with a mixed civil and criminal jurisdiction. Criminal courts were only established in the most densely populated parts of the state, and for the relief of the circuit courts.

*McCarthy v. State*, 15 S.W. 736, 737 (Tenn. 1890). Therefore, we consider the Washington County criminal court to be a circuit court.

[4] For those convicted of a felony under federal law, courts determining whether the exception in 18 U.S.C.A. § 921(a)(20) applies "must look to whether [the felons'] civil rights were restored under federal law." *Beecham v. United States*, 511 U.S. 368, 374 (1994). Thus, if a federal felon's civil rights are restored under only state law, he or she would still meet the definition of "conviction." *Walker v. United States*, 800 F.2d 720, 728 (6th Cir. 2015). A federal felon may petition the Bureau of Alcohol, Tobacco and Firearms

For federal law to recognize that a state has fully restored a state felon's rights, however, the state restoration must include "the right to vote, hold public office, and serve on a jury." *Hampton v. United States*, 191 F.3d 695, 699 (6th Cir. 1999) (citing *United States v. Driscoll*, 970 F.2d 1472, 1480 (6th Cir. 1992)). If the state restoration includes the aforementioned rights, the petitioner then may lawfully possess firearms under 18 U.S.C.A. § 922(g) unless there "is some added firearms restriction under state law." David L. Raybin, *Stick to Your Guns: Restoration of Tennessee's "Firearm Rights,"* 39 TENN. B.J. 17, 18 (Mar. 2003). For instance,

> [I]f the state says that a restored-rights felon may possess a shotgun but not a pistol, the state has allowed the felon to possess the shotgun under state law but, because the state has created some firearm restriction for a convicted felon, this means that the federal prohibition applies with full force notwithstanding a state restoration of rights. Thus, in the shotgun-pistol example, that person could be convicted under federal law for possession of the shotgun even though it would be perfectly lawful under state law.

*Id.* (citing *Caron v. United States*, 524 U.S. 308 (1998)).

As discussed above, Tennessee law contains additional firearm restrictions for felony drug convictions and certain violent felony convictions, neither of which applies to Mr. DeDreux. Therefore, because the rights restored to Mr. DeDreux included his right to vote, hold office, and serve on a jury, there would be no conflict between state and federal law if the trial court had not expressly limited the restoration of his rights by excluding his firearm rights.

Besides believing there was a conflict between state and federal law, the trial court expressed no other basis for rebutting the statutory presumption that Mr. DeDreux's citizenship rights should be fully restored, and this Court finds no evidence in the record to support any other basis. We, therefore, conclude that the trial court erred in determining that an "otherwise good cause" rebutted the presumption that Mr. DeDreux's full citizenship rights should be restored. The trial court's decision is reversed, and the case is remanded for entry of an order restoring Mr. DeDreux's full citizenship rights, including his firearm rights.

---

("ATF") to remove the federal firearm disability, but "ATF's annual appropriation [from Congress] has prohibited the expending of any funds to investigate or act upon applications for relief from federal firearms disabilities" since 1992. *United States v. Bean*, 537 U.S. 71, 75 (2002). Therefore, absent receiving a presidential pardon, a federal felony conviction permanently bars possession of a firearm.

CONCLUSION

The judgment of the trial court is reversed, and the case is remanded to the trial court. Costs of this appeal are assessed against the appellee, State of Tennessee, for which execution may issue if necessary.


_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE